UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Peterson, et al.,
for and on behalf of themselves
and other persons similarly
situated,

Plaintiffs,

v.

MEMORANDUM OPINION
AND ORDER
Civil No. 07-2502

Seagate US LLC, Seagate Technology,
et al.,

Defendants.

---

Beth E. Bertelson and Andrea R. Ostapowich, Bertelson Law Offices, P.A., and Dorene R. Sarnoski, Dorene R. Sarnoski Law Office Law Office for and on behalf of Plaintiffs.

Marko J. Mrkonich, Kathryn Mrkonich Wilson and Susan K. Fitzke, Littler Mendelson for and on behalf of Defendants.

---

Background

This is a putative class action in which the class alleges it was discriminated against on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The class also seeks

declaratory relief relating to the enforceability of purported releases and waivers signed by many of the plaintiffs.

This matter is before the Court upon Plaintiffs' motion for partial summary judgment as to the invalidity of the releases.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is , pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Analysis

By Order dated November 20, 2007, this Court denied Seagate's motion to

dismiss, finding that Plaintiffs had sufficiently alleged that the releases were invalid under the law. Subsequently, the Court denied Seagate's request to file a motion for reconsideration and denied Seagate's request to certify the November 20, 2007 Order for interlocutory appeal. Plaintiffs now move for partial summary judgment as to the invalidity of the releases. Plaintiffs assert that there are no genuine issues of material fact, as their motion is based solely on Seagate documents, and that based on such evidence, they are entitled to judgment as a matter of law.

The parties agree that the releases at issue herein are governed by the Older Workers Benefits Protections Act ("OWBPA"), 29 U.S.C. § 626(f). OWBPA was enacted to protect the rights and benefits of older workers. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427 (1998). The Supreme Court has interpreted OWBPA as providing for a "strict, unqualified statutory stricture on waivers" and found that it incorporates no exceptions or qualifications. Id. Thus, to comply with OWBPA, a waiver must comply with each prerequisite. Thomforde v. Int'l Bus. Mach., Corp., 406 F.3d 500, 503 (8th Cir. 2005). Substantial compliance is not adequate. Suhy v. Alliedsignal, 44 F. Supp. 2d 432, 436 (D. Conn. 1999); Hartger v. Int'l Bus. Mach., Corp., Civ. No. 04-2124, 2005 WL 2095774, at *2 (N.D.

Tex. Aug. 31, 2005). The party asserting the validity of the waiver has the burden of proving that the waiver was knowing and voluntary. 29 U.S.C. § 626 (f)(3).

Pursuant to OWBPA, an individual cannot waive any right or claim under the ADEA unless the waiver is knowing and voluntary. A waiver is not considered "knowing and voluntary" unless, at a minimum, the waiver satisfies a number of requirements. 29 U.S.C. § 626 (f)(1). The waiver must: be written in a manner calculated to be understood by the individual, § 626 (f)(1)(A); refer to rights or claims arising under the ADEA, § 626 (f)(1)(B); not waive rights or claims that may arise in the future, § 626 (f)(1)(C); be in exchange for consideration in addition to anything of value to which the individual is already entitled, § 626 (f)(1)(D); advise the individual in writing to consult with an attorney, § 626 (f)(1)(E); provide at least 21 days to consider the agreement, or 45 days if offered in a reduction in force ("RIF"), § 626 (f)(1)(F); provide a seven day period to revoke, § 626 (f)(1)(G); and, if offered in connection with an exit incentive program or RIF, inform as to the eligibility as to class, unit, and time limits and the job titles and ages of all individuals eligible or selected for the program and the job titles and ages of those not selected for the program. § 626(f)(1)(H).

"The absence of even one of the OWBPA's requirements invalidates a waiver." Kruchowski v. Weyerhaeuser Co., 446 F.3d 1090, 1095 (10th Cir. 2006) (quoting Butcher v. Gerber Prods. Co., 8 F. Supp. 2d 307, 314 (S.D.N.Y. 1998)).

Even if the waivers technically meet the requirements set forth in § 626 (f)(1), federal regulations further provide that "[t]he waiver agreement must not have the effect of misleading, misinforming, or failing to inform participants and affected individuals." 29 C.F.R. § 1625.22(a)(3).

**1. Failure to Disclose the Proper Required Information (Job Titles and Ages) of all Terminated Employees at the Normandale Facility with Respect to the 2004 RIF.**[1]

Plaintiffs assert that Seagate did not properly disclose the job titles and ages of all employees terminated in the RIF as required under § 626 (f)(1)(H)(ii) (requiring the job titles and ages of all individuals eligible or selected in the same job classification or organizational unit and those not eligible or selected for the program). Plaintiffs have identified two employees that were terminated from the Normandale facility, who cannot identify themselves on the chart provided.

[1]No similar challenge was made with regard to the chart concerning the Shakopee facility.

These employees are Susan Walseth, 49 years old at the time of her termination, job title Engineering Specialist and James Peterson, age 59 at the time of termination, job title Sr. Development Engineer.

Seagate responds that the charts prepared to show the affected Normandale employees are materially accurate and complete. First, Seagate asserts that Peterson does appear in Seagate's disclosures. Williams Decl., Ex. 1. Seagate concedes that Walseth does not appear on the chart, and argues that the inadvertent omission of one employee should not render the releases invalid.

Plaintiffs respond that OWBPA requires strict compliance, therefore this Court should not accept Seagate's argument that the omission of Walseth was not a material misrepresentation. It may be that the inadvertent omission of a particular employee would be enough to affect one other employee's decision to sign the release.

Furthermore, Plaintiffs note that it remains unclear how many employees were terminated from the Normandale facility pursuant to the 2004 RIF. Initially, it was reported that 154 employees were terminated. In response to an EEOC inquiry, however, the number changed to 152. Then, in response to Plaintiffs' charge, the number changed to 234. Finally, in later correspondence to the EEOC,

the number changed again to 151.

Seagate responds that this a complete distortion of the record. At the time of the 2004 RIF, affected employees were told that 154 Normandale employees would be terminated. Later, in a submission to the EEOC, the number was reported as 151, and later clarified to be 152. Seagate never reported the number to be 234. In a letter to the EEOC, Seagate notified the EEOC that the 2004 workforce reduction affected 234 employees - 83 of which were employees who elected SIRP participation, and the remaining 151 were selected under the RIF. (Compare Bertelsen Aff, Ex. 3 with Supplemental Fitzke Aff., Ex. 35). The latest number provided by Seagate however is 152. Williams Decl., ¶ 6.

Despite the parties' dispute as to these numbers, the only number of relevance is the number presented to employees at the time of the RIF, and whether that number was accurate. In this case, there is no dispute that employees were told that 154 were affected the by RIF at the Normandale facility, and Seagate now admits the number was actually 152.

Because the evidence is undisputed that the information presented to Plaintiffs with respect to the Normandale facility was not accurate, and OWBPA requires strict compliance, the Court must find that the releases are invalid as a

matter of law. In so finding, the Court agrees with Plaintiffs that an analysis of whether the information provided was materially misleading is necessary only if the releases first met the prerequisites of § 626 (f)(1)(A)-(H).

**2. Disclosing Numerous Job Categories with Several Different Job Codes Renders Required Disclosures Unintelligible**.

Plaintiffs also argue that OWBPA requires disclosure of more than just generic job categories and codes: "In a termination of persons in several established grade levels and/or other established subcategories within a job category or job title, the information shall be broken down by grade level or other subcategory." 29 C.F.R. § 1625.22 (f)(4)(iii).

Plaintiffs point out that the disclosed charts lists different categories of "Engineer": Engineer, Engineer Manager, Engineering Specialist, and Sr. Engineer - each with a different job codes. They are not grouped together, nor is there a definition of the job codes. Plaintiffs assert that the presentation of this information was confusing.

Seagate responds that while Plaintiffs may have preferred that the required disclosures were formatted differently, Seagate nonetheless complied with OWBPA by providing the relevant job titles and job codes, as well as ages of the

affected employees. Further, all terminated employees were listed in one chart, while the unaffected employees were listed on a separate chart for easy reference. To the extent that Plaintiffs challenge Seagate's use of job codes, Plaintiffs have created an issue of fact that is not appropriate for summary judgment.

As to this last point, the Court disagrees. In opposing Plaintiffs' motion for partial summary judgment, Seagate has the burden to demonstrate the lack of genuine issues of material fact, that the waivers strictly complied with OWBPA. Furthermore, as the party asserting the validity of the waiver, Seagate had the burden of demonstrating what the job codes stood for, in order to respond to Plaintiffs assertions that the use of job codes was confusing. Seagate did not do so.

In Raczak v. Ameritech Corp., the Sixth Circuit Court of Appeals recognized that the information required of clause (H)(ii) may be manipulated by the employer who may "want to fiddle with the definition[s] to mask the possible evidence for age discrimination." 103 F.3d 1257, 1263 (6th Cir. 1997).

> Thus, as a speculative example, if the company had actually decided to fire all the old tax lawyers, but not to touch other lawyers, or to be non-discriminatory in its treatment of all other lawyers, it would be in its interest to use a wider category such as all lawyers, to disguise the smaller sub-unit of discrimination. On the other hand, using very small sub-units

> could also mask discrimination because it is much more difficult to show or perceive discrimination when only very small numbers are involved.

Id. (internal citations omitted).

In this case, without knowing what the job codes stand for, the Court agrees that the charts, as presented, do not provide information in a manner calculated to be understood by the individual employees. Accordingly, the Court finds that the releases signed by those plaintiffs subject to the 2004 RIF do not strictly comply with § 626 (f)(2)(H)(ii) and are therefore invalid as a matter of law.

**3. Prohibiting Signers from Filing EEOC Charges**

Finally, Plaintiffs assert that the releases at issue are invalid as they include waiver language as to the employees' rights to file charges with the EEOC. See Doc. No. 6; Williams Decl. and attached exhibits.

OWBPA provides that waivers shall not affect the EEOC's rights and responsibilities, and shall not be used to justify interfering with a protected right of an employee to file a charge or participate in an investigation conducted by the EEOC. § 626 (f)(4). Federal regulations further provide that no waiver agreement may include provisions that prohibit the filing of a charge with the EEOC. 29 C.F.R. § 1625.22 (i)(2)(i). Courts have recognized, however, that as

this provision is not included in the minimum requirements for waivers provided in § 626 (f)(1), the inclusion of a restriction to communicate with the EEOC does not automatically invalidate the release in its entirety. Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 289 (3d Cir. 2003).

> In stark contrast to the mandatory prerequisites listed for waiver agreements under § 626 (f)(1), [] there is no clear statutory indication that a waiver agreement that contains a provision that runs afoul of the provisions of § 626 (f)(4) is suspect, let alone invalid. Indeed, the language suggests just the opposite. The statute essentially states that, whatever its provisions, a privately executed waiver agreement cannot alter or obstruct the EEOC's ability to exercise its rights and responsibilities, and that an employer may not invoke a waiver in an attempt to impede an employee's participation in EEOC procedures. Both requirements appear to contemplate the validity of an underlying waiver of a legal action and deal only with the administrative process - namely, the rights of the EEOC to do its job and the right of the employee to file a claim with the agency. At most, the statutory language can be read to mean only that a provision that purports to, for example, alter the EEOC's rights to pursue and investigate a claim that is filed, is unenforceable.

Id. See also Thiessen v. Gen. Elec. Capital Corp., 232 F. Supp.2d 1230, 1242 (D. Kan. 2002). The Court in Wastak further found that the enactment of the relevant federal regulations did not change this result.

> We note, however, that a regulation that became effective after the incident before us clearly precludes the inclusion of provisions that prohibit resort to administrative process. See 29 C.F.R. § 1625.22(i)(2) ("No waiver agreement may include any provision prohibiting any individual from ... [f]iling a charge or complaint, including a challenge to the validity of the

> waiver agreement, with [the] EEOC."). **The presence of such a prohibition in a waiver agreement that is subject to this regulation could certainly lead a court to find, under proper circumstances, that the waiver "ha[d] the effect of misleading, misinforming, or failing to inform" the plaintiff, 29 C.F.R. § 1625.22(b)(4), thus rendering the waiver not "knowing and voluntary," and, therefore, invalid. But, again, that is not this case.**

Id. 342 F.3d at 293, n. 6.

Wastak thus suggests that the Court would have to look to the totality of the circumstances to determine whether the inclusion of the prohibition on filing EEOC charges had the effect of misleading, misinforming or failing to inform to such an extent as to render the entire agreement invalid.

The Court finds that the inclusion of the provision in the releases that purports to waive the employee's right to file an EEOC charge or participate in an EEOC investigation renders only that specific provision invalid as a matter of law. Applying the reasoning set forth in Wastak, the Court would need to look to the totality of the circumstances to determine whether the inclusion of such a provision had the effect of misleading, misinforming or failing to inform to such an extent as to render the entire agreement invalid. Plaintiffs have not, however, presented the Court any evidence as to whether any of them were mislead by the inclusion of this particular provision.

**4. Plaintiff Paul Calcagno**

Plaintiff Paul Calcagno participated in Seagate's Special Incentive Retirement Plan ("SIRP"). The release he signed was different in form and content. See Doc. No. 6, Williams Decl., Exs. 2, 21, 22 and 23. Seagate asserts that in Plaintiffs' moving papers, they made no attempt to demonstrate that the release signed by Plaintiff Calcagno violated OWBPA, therefore summary judgment in favor of Plaintiff Calcagno as to the validity of his release is not appropriate.

In their reply brief, Plaintiffs assert the Calcagno release is invalid as a matter of law because it contains language prohibiting Calcagno from filing an EEOC charge. As discussed previously, however, the inclusion of such language does not, in and of itself, render the release in its entirely invalid. The question remains whether, under the totality of the circumstances, the inclusion of such a provision had the effect of misleading, misinforming or failing to inform to such an extent as to render the entire agreement invalid.

Plaintiffs further argue that Seagate did not provide Plaintiff Calcagno proper decisional unit information. While the release that Calcagno signed provided that he would be given information as to the job titles and ages of all

other U.S. employees eligible for and given the opportunity to participate in the SIRP, the only information Calcagno was given concerned only the Bloomington facility. Doc. No. 6, Exs. 2, p. 3 and 21, p. 5.

The federal regulations enacted to assist the courts in determining whether or not employers complied with OWBPA recognize that the identity of a decisional unit is made on a case-by-case basis. 29 C.F.R. § 1625.22 (f)(3)(ii)(A). The regulations further recognize that the decisional unit is typically no broader than the facility. § 1625.22(f)(3)(ii)(B). While the release document signed by Calcagno provides he was given information concerning the Oklahoma and Shakopee facilities (Doc. No. 6, Ex. 2), the information he was actually provided clearly denotes that the information provided covered only the Bloomington facility (Doc. No. 6, Ex. 21, p. 4). Calcagno therefore cannot argue that he was misled into thinking the information provided covered all three facilities. The Court further notes that Plaintiffs have not challenged the accuracy of that information. Accordingly, on this record, the Court finds that Plaintiffs have not demonstrated that the Calcagno release violated OWBPA because he was not provided the job titles and ages of those employees deemed eligible/ineligible for the SIRP at the Oklahoma and Shakopee facilities.

IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 50] is GRANTED in part and DENIED in part. The Releases offered to those Plaintiffs terminated pursuant to the 2004 RIF are invalid as a matter of law.

Date: May 28, 2008

s / Michael J. Davis
Michael J. Davis
United States District Court