# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

JAMES PETERSON, ET AL.,

   PLAINTIFFS,

V.

SEAGATE US LLC, ET AL.,

   DEFENDANTS.

CIVIL NO. 07-2502 (MJD/AJB)

**ORDER OPINION**

---

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Plaintiffs' Motion to Compel Discovery [Docket No. 171] and Defendants' Motion to Compel Discovery Responses [Docket No. 168]. A hearing was held on the motions on September 23, 2009. [Docket No. 193.] Dorene Sarnoski and Beth Bertelson appeared on behalf of Plaintiffs. Susan Fitzke and Kathryn Wilson appeared on behalf of Defendants.

District courts have broad discretion to limit discovery and decide discovery motions. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993). A discovery request is relevant unless it is clear that the information sought can have no possible bearing on the subject matter of the action. See Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 522 (D. Minn. 1992). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

# I. PLAINTIFFS' MOTION TO COMPEL

## A. Plaintiffs' Interrogatories Nos. 2 and 8

Plaintiffs contend that Defendants have neither complied with Plaintiffs' "Amended General Interrogatory No. 2" (Interrog. No. 2) and "General Interrogatory No. 8" (Interrog. No. 8) nor complied with this Court's March 31, 2009 Order. (Pl.'s Mem. 4-9, Sept. 9, 2009.)

Both parties need a complete list of employees that permits the parties' experts to conduct statistical analyses. In February 2009, Defendants responded to Plaintiffs' Interrog. No. 8 and subsequently amended that response. On July 29, 2009, Defendants responded to Plaintiffs' Interrog. No. 2 and provided data related to its employee population on an Excel spreadsheet that included the following data fields: employee name, current performance description, previous performance description, adjusted service date, hire date, job code, job grade, fixed annual base salary, job title, job function, job family, highest degree, business location, supervisory chain, birth date, employment status, and last day worked. Plaintiffs raised a question as to why the number of individuals identified in Defendants' response to Interrog. No. 8 was different than the number of individuals identified in Defendants' response to Interrog. No. 2. Defendants responded that they have "been clear in informing Plaintiffs that it is investigating this issue in an attempt to determine whether employees are, in fact, missing from its answer to [Interrog. No. 2]" and "anticipate[] supplementing its Answer to Plaintiffs' [Interrog. No. 2] in advance of the . . . hearing." (Def.'s Mem. 8-9, Sept. 16, 2009.)

This Court concludes that all of the data sets requested by Interrog. No. 2 and Interrog. No. 8 are relevant to these proceedings. Fed. R. Civ. P. 26(b)(1). But, Interrog. No. 2 and Interrog. No. 8 request different sets of data and therefore, the results will not be the same. This Court recognizes that Plaintiffs need responses to Interrog. No. 2 and Interrog. No. 8 that allow

Plaintiffs to construct a complete list. To do so, there must be redundancies in Defendants' responses to Interrog. No. 2 and Interrog. No. 8 that permit Plaintiffs to complete their list. This Court orders that, on or before October 30, 2009, Defendants' shall provide complete and accurate responses to Amended General Interrogatory No. 2 and General Interrogatory No. 8, and those responses must have an unambiguous and redundant data field(s) that permits Plaintiffs to combine the responses to both interrogatories into a complete list. This Court denies Plaintiffs' motion as to Amended General Interrogatory No. 2 and General Interrogatory No. 8 in all other respects.

## B. Plaintiffs' General Interrogatory No. 9

Plaintiffs contend that Defendants have not produced a response to General Interrogatory No. 9 (Interrog. No. 9). (Pl.'s Mem. 9-10, Sept. 9, 2009.) Plaintiffs further contend that they have proof that Defendants possess the information requested, despite Defendants' contentions otherwise. (*Id.*) Defendants contend that they do not electronically track the information requested in Interrog. No. 9, but they can provide a report reflecting any change to job grade, job function, job family, job title, location or supervisor for the period January 1, 2003, to December 31, 2005, for employees listed in Interrog. No. 2, see *supra* I.A. (Def.'s Mem. 11-12, Sept.16, 2009.) At the hearing, Defendants stated that they would provide this responsive report within two (2) weeks. Defendants request this Court approve their proffered report as sufficient and fully responsive to Interrog. No. 9. (Def.'s Mem. 12, Sept. 16, 2009.)

This Court is not empowered "to give opinions upon . . . abstract propositions." *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quotation omitted). Thus, this Court is not empowered to rule upon whether or not information that has yet to be produced complies with Interrog. No. 9. But, this Court does not believe that

Defendants must produce data that is not kept in the ordinary course of business. Thus, this Court grants Plaintiffs' motion to the extent that this Court orders that, on or before October 15, 2009, Defendants shall provide the complete, nonprivileged information responsive to General Interrogatory No. 9 that Defendants keep in their ordinary course of business and that Defendants proffered within their brief and during the hearing. This Court denies Plaintiffs' motion as to General Interrogatory No. 9 in all other respects.

### C. Plaintiffs' Requests Nos. 28 & 29

Plaintiffs contend that Defendants have not complied with Doc. Requests 28 and 29. (Pl.'s Mem. 13, Sept. 9, 2009.) Request No. 28 requests to meet and confer "for the purposes of determining appropriate fields of information," but then goes on to request "all HR records . . . for all employees." (Pl.'s Mem. 13-14, Sept. 9, 2009.) Request 29 requests "all documents necessary to identify every field of information contained in the electronic databases."

To the extent that Plaintiffs request this Court order the Defendants to submit affidavits, Plaintiffs' motion is denied. (Pl.'s Mem. 17-18, Sept. 9, 2009.) A motion to compel will rarely be a proper forum for requesting an admission in the first instance. But, this Court concludes that information regarding Defendants' HR data fields is relevant to this litigation and reasonably calculated to lead to the discovery of admissible evidence. However, Plaintiffs Document Request No. 28 is overbroad.

To the extent that Plaintiffs request compliance with Document Requests 28 and 29, this Court grants their motion in part and denies their motion in part. This Court orders that, on or before October 30, 2009, Defendants shall provide nonprivileged information responsive to Plaintiffs' request by providing complete electronic HR records for all Plaintiffs and 50

employees randomly selected from Interrog. No. 2.[1] Complete electronic HR records includes but is not limited to data contained in HRMS, Executive Talent Review (ETR), iMap, and eLearning records as well as non-database records including but not limited rankings and employee profiles like that created by Vice President Ken Allen. The purpose of this Order is to provide Plaintiffs with a complete picture of the electronic HR data that is available, not necessarily the contents of the HR documents. Thus, Defendants may redact the records to preserve objections and employee privacy, and Defendants shall amend their privilege log to correspond with all redactions.

Likewise, this Court concludes that Request No. 29 is overbroad in its request for explanations, but this Court concludes that the documents requested are relevant to these proceedings. Therefore, this Court orders that, on or before October 30, 2009, Defendants shall provide nonprivileged documents that are responsive to Plaintiffs' request, but need not produce explanations that they do not keep in the ordinary course of business. Plaintiffs' motion as to Document Requests Nos. 28 and 29 is denied in all other respects.

### D. **Plaintiffs' Document Request No. 34**

Plaintiffs request "exact copies of Peter Segar's hard drives." (Pl.s' Mem. 11, Sept. 9, 2009.) The Court grants Plaintiffs' motion to the extent that this Court orders that, on or before October 30, 2009, Defendants shall designate Peter Segar as a sampling custodians and from the 288 megabytes of available data, Defendants shall use the agreed upon search terms to produce complete, nonprivileged information that is responsive to Plaintiffs' request. This Court denies Plaintiff's motion as to Request No. 34 in all other respects.

---

[1] Defendants shall alphabetize the individuals and provide Plaintiffs with the random numbers used to select the 50 employees.

### E. Privilege Documents

Pursuant to this Court's order at the hearing, Defendants submitted to the chambers for in-camera review the documents Defendants have withheld based upon the assertion of attorney-client privilege or work-product doctrine. On October 6, 2009, Plaintiffs sent a letter to the chambers in which Plaintiff asserts "that no additional arguments should be submitted without an opportunity to respond." First, Defendants submitted a letter in which they described the withheld document and plainly stated the basis of the privilege with the words "WORK PRODUCT," "ATTORNEY-CLIENT PRIVILEGE," or "WORK PRODUCT AND ATTORNEY-CLIENT PRIVILEGE." This Court does not consider Defendants' documents to be "additional arguments." Second, on September 23, 2009, this Court ordered that "Parties may submit briefing. Briefing may be filed under seal if necessary." [Docket No. 193.] Thus, both parties are within their right to submit "additional arguments." Therefore, this Court overrules Plaintiffs' objections.

In this case, attorney-client privilege, asserted to protect documents from disclosure, is determined in accordance with Minnesota law. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987). The attorney-client privilege attaches to corporations as well as to individuals. *Kahl v. Minnesota Wood Specialty, Inc.*, 277 N.W.2d 395, 397 (Minn. 1979). "[T]he party resisting disclosure bears the burden of presenting facts to establish the privilege's existence." *Kobluk v. University of Minnesota,* 574 N.W.2d 436, 440 (Minn. 1998). Minnesota employs the following definition of attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* at 440 (citing 8 John Henry Wigmore, *Evidence* § 2292, at 554 (McNaughton rev.1961)). Minnesota has not adopted a distinct test for corporations. *Leer v. Chicago, M., St. P. & P. Ry. Co.,* 308 N.W.2d 305, 309 (Minn.1981); *see also In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) (noting that the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 396-97, 101 S. Ct. 677, 686 (1981), declined to adopt a test in favor of a case-by-case analysis).

The decision to terminate an employee is a business decision. *See, e.g., Walker v. AT & T Technologies*, 995 F.2d 846, 849 (8th Cir. 1993) (concluding that the district court erred by failing to instruct jury of employer's right to exercise business judgment in making personnel decisions). But the decision to terminate an employee can contain legal considerations. *See, e.g.*, 29 U.S.C. § 2101, *et seq.* (Worker Adjustment and Retraining Notification Act). Further, communications with an attorney about business decisions do not fall within the protection of attorney client privilege.

> [T]he attorney-client privilege does not protect client communications that relate only business or technical data. Just as the minutes of business meetings attended by attorneys are not automatically privileged . . . business documents sent to corporate officers and employees, as well as the corporation's attorneys, do not become privileged automatically. . . . Client communications intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice based thereon.

*Simon*, 816 F.2d at 403-04 (interpreting Minnesota law) (citations and quotation omitted).

The work-product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Simon*, 816 F.2d at 400. Rule 26(b)(3) generally precludes discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," but permits discovery if the documents and tangible things "are otherwise

discoverable under Rule 26(b)(1) . . . and . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

> "[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation."

*Simon*, 816 F.2d at 401 (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198-99 (1970)).

   1. **Row 5**

Row 5 is the typed form of the notes that were produced to Plaintiffs in their original handwritten form. Plaintiff contends that Row 5 is not protected because they are notes written by the Vice President of Global staffing, the notes were not for legal advice, and there was no litigation anticipated at the time of their creation. (Pl.'s Mem. 20, Sept. 9, 2009.) Defendants assert that they were typed at the request of counsel and in preparation for litigation. (Def.'s Mem. 28, Sept. 16, 2009.) Therefore, row 5 falls within the purview of work-product protection. This Court denies Plaintiffs' motion as it relates to row 5 because Plaintiffs failed to show that they have substantial need for the material and cannot, without undue hardship, obtain their substantial equivalent by other means.

### 2. Rows 26, 28, 32, 34[2]

Plaintiffs contend that the notes labeled as rows 26, 28, 32, and 34 are not subject to attorney-client privilege because they were not authored or received by an attorney. (Pl.'s Mem. Attorney-client privilege can attach to notes prepared by the client in conjunction with communication with counsel. *See Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 387 (D. Minn. 1992) (stating that "notes and memoranda containing client communications" can be protected by privilege); *U.S. v. Bonnell*, 483 F. Supp. 1070, 1077 (D. Minn. 1979) ("Communications from the attorney to the client are ordinarily protected only if the communications reveal the substance of the client's own statements."); *see also In re Zurn Pex Plumbing Products Liability Litigation,* No. 08-1958, 2009 WL 1178588, *2 (D. Minn. 2009) (stating "handwritten notes of telephone calls with in-house counsel regarding follow-up on litigation concerns" are protected under the attorney-client privilege). This Court denies Plaintiffs' motion as it relates to rows 26, 28, 32, and 34 because Defendants met their burden as to these documents. The notes provided for in-camera review reveal legal advice and the substance of the Defendants' statements.

### 3. Rows 47 through 67, and 71 through 78

Plaintiffs contend that rows 47 through 67 are ineligible for privilege protection because they reflect business decisions. (Pls.' Mem. 20, Sept. 9, 2009.) Plaintiffs contend that rows 71 through 78 are not "communications" and therefore, they are ineligible for privilege protection. (Pls.' Mem. 21, Sept. 9, 2009.)

---

[2] Plaintiffs' initial letter challenges "Rows . . . 3, 32, and 34." (Pl.'s Mem. 20, Sept. 9, 2009.) Plaintiffs' letter to chambers from October 6, 2009 challenges "Rows . . . 31 – 24." This Court will not guess what numbers Plaintiffs mean and will not consider challenges not raised in a proper motion. Plaintiffs provided no briefing on "Row 3" and therefore, this Court deems Plaintiffs' challenge to be waived.

First, rows 48, 56, 59, 60 were disclosed and therefore, this Court denies Plaintiffs' motion as to these rows as moot.

Second, this Court denies Plaintiffs' motion as it relates to rows 47, 49, 51, 52, 53, 54, 57, 58, 61, 62, 63, 64, 65, 66, 67, 72, 73, 75, 76, and 77. Defendants have met their burden as to these rows. These rows reveal legal advice and the substance of the Defendants' statements. In addition, rows 66 and 67 contain irrelevant information of a private nature about employees who are not subject to this litigation.

Third, this Court grants Plaintiffs' motion as it relates to rows 50 and 55 because Defendants have not met their burden as to these rows. Row 50 reflects business advice, not legal advice. Row 55 does not reveal legal advice or the substance of the Defendants' statements. On or before October 30, 2009, Defendants shall produce rows 50 and 55.

Fourth, this Court denies Plaintiffs' motion as it relates to row 71. It is evident that this row was written in preparation for litigation and therefore, the document is subject to work-product protection. Plaintiffs' have not met their burden as to necessity to warrant compelling disclosure.

Fifth, this Court grants in part and denies in part Plaintiffs' Motion as it relates to row 78. This Court denies Plaintiffs' motion as to the first two lines, but grants the motion as to the remainder of the document because these other lines do not reflect legal advice. On or before October 30, 2009, Defendants shall produce row 78 to Plaintiffs with only the first two lines redacted.

### F. <u>Plaintiffs' Requests for Monthly Case Management Conferences & Extension of Time</u>

This Court denies Plaintiffs' request for monthly case management conferences. Defendants have no objection as to Plaintiffs requested extension. But, Plaintiffs' requested

deadline of "60 days from the date Defendants provide Plaintiffs with accurate work force data" does not prevent this case from "languishing." This Court has ordered Defendants provide disclosures by October 30, 2009. If Plaintiffs require additional data fields, Plaintiffs may submit an amended Interrog. No. 2 before November 12, 2009. Defendants shall provide responses to any amended Interrog. No. 2 before November 28, 2009.

This Court orders an extension of the current scheduling deadlines as follows: Disclosure of the identity of Class expert witnesses under rule 26(a)(2)(A) and the full disclosures required by Rule 26(a)(2)(B), accompanied by a written report prepared and signed by the expert witness, will be made as follows.

1. By Plaintiffs on or before **February 1, 2010**.[3]

2. By Defendants on or before **March 15, 2010**.[4]

3. Rebuttal witnesses on or before **April 15, 2010**.[5]

## II. DEFENDANTS' MOTION TO COMPEL [DOCKET NO. 180]

It appears that Defendants are seeking discovery as to Plaintiffs' mitigation efforts.

> A successful ADEA plaintiff must show that he or she attempted to mitigate damages or face a reduction in the damage award. This duty to mitigate requires a plaintiff to use reasonable diligence in finding other suitable employment and not to refuse a job that is substantially equivalent to the one at issue.

---

[3] This date was originally set as December 15, 2008. [Docket No. 73.] It was amended to August 1, 2009. [Docket No. 130.] It was amended a second time to November 1, 2009. [Docket No. 167.]

[4] This date was originally set as January 1, 2009. [Docket No. 73.] It was amended to September 15, 2009. [Docket No. 130.] It was amended a second time to December 15, 2009. [Docket No. 167.]

[5] This date was originally set as February 1, 2009. [Docket No. 73.] It was amended to October 15, 2009. [Docket No. 130.] It was amended a second time to January 15, 2009. [Docket No. 167.]

*Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (8th Cir. 1997) (citations omitted). "The burden remains on the employer to show that the employee failed to mitigate his damages." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002). Thus, Defendants can conduct discovery as to Plaintiffs' mitigation efforts because that discovery is relevant to the Defendants' possible defence. Fed. R. Civ. P. 26(b)(1).

It appears that Defendants requested from all Plaintiffs "Copies of [their] complete federal and state income tax returns with all schedules and attachments, from tax year 2004 forward." Defendants contend that Plaintiffs have failed to produce 2008 tax documents. Plaintiffs cite *E.E.O.C. v. Ceridian Corp.* for the proposition that federal courts generally resist discovery of tax returns. *E.E.O.C. v. Ceridian Corp.,* 610 F.Supp.2d 995 (D. Minn. 2008). *E.E.O.C. v. Ceridian* is distinguishable from the present case because the procedural posture of that case meant that the sought tax returns were from non-parties. In the present case, Plaintiffs' tax returns are relevant to the parties' claims and defences. Fed. R. Civ. P. 26(b)(1). And Plaintiffs have not proffered other means of satisfying Defendants' interest in obtaining relevant discovery. Thus, this Court orders that, on or before October 30, 2009, Plaintiffs shall provide complete, non-privileged information responsive to this request by producing all state and federal tax returns with all schedules and attachments, from tax year 2004 forward, including the 2008 tax year if they have been filed. Plaintiffs can redact portions of the tax returns that identify nonparties or pertain only to non-parties. Moreover, the Protective Order [Docket No. 83] is should assuage Plaintiffs of any other privacy concerns.

It appears that Defendants requested from all Plaintiffs "[a]ll records and documents that refer or relate to your earnings and income after the termination of your employment relationship with any of the Defendants." Defendants contend that Plaintiffs have not produced documents

relating unemployment and social security benefits, W-2's or 1099 forms. This Court concludes that the request for unemployment benefits is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," namely the parties' tax returns. This Court concludes that social security and unemployment benefits are also irrelevant. *See Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1112 (8th Cir. 1994) (quoting *Beshears v. Asbill*, 930 F.2d 1348 (8th Cir.1991). Thus, this Court denies Defendants' motion as it pertains to unemployment and social security benefits. But, this Court concludes that W-2's and 1099 forms are relevant; and this Court orders that, on or before October 30, 2009, Plaintiffs shall provide complete, non-privileged information responsive to this request by producing all state and federal tax returns with all schedules and attachments, from tax year 2004 forward, including the 2008 tax year if they have been filed, as well as W-2 and 1099 forms.

In addition, this Court orders as follows:

**A. Theresa Raskob**

Defendants requested Plaintiff Theresa Raskob produce "[a]ll documents that refer or relate to your efforts to obtain employment from January 1, 2004, forward." Defendants contend that they are entitled to Theresa Raskob's medical records because her health bears on her ability to seek alternate employment and mitigate her alleged damages. (Def.'s Mem. 7-9, Sept. 9, 2009.) This Court concludes that Defendants' request is overbroad because it seeks irrelevant information of a highly personal nature. While a Plaintiff cannot claim emotional distress damages, "[i]f an employee suffers a 'wilful loss of earnings,' . . . the employer's backpay liability is tolled." *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1168-69 (6th Cir. 1996). Defendants are entitled to discovery that is relevant to the question whether Plaintiff

suffered a wilful loss of earnings. Plaintiffs seems to be willing to concede that Theresa Raskob's hospitalization periods constituted a "wilful loss of earnings," (Pl.'s Mem. 7, Sept. 16, 2009), and Defendants can certainly pursue an admission or stipulation to that end. But, this Court orders that, on or before October 30, 2009, in the absence of agreement between the parties, Plaintiff Theresa Raskob shall disclose the medical documentation that pertains her periods of hospitalization. This Court denies Defendants' motion as to Theresa Raskob's medical records in all other respects.

Defendants also requested documents from Theresa Raskob pertaining to her former residence because Defendants assert that Theresa Raskob is seeking damages for the loss of her residence. (Def.'s Mem. 9, Sept. 9, 2009.) Plaintiffs contend that Theresa Raskob's financial situation and housing situation are irrelevant given that her claim is under the ADEA, which limits damages to back pay, front pay, liquidated damages, and fees/costs. (Pl.'s Mem. 10, Sept. 16, 2009.); *see* 29 U.S.C. § 626. This Court agrees. The only relevant issue is whether "plaintiff . . . use[d] reasonable diligence in finding other suitable employment." *Newhouse*, 110 F.3d at 641. Plaintiff Theresa Raskob's loans, lenders, bank statements, credit reports, and credit scores are irrelevant to this issue. This Court denies Defendants' motion as it pertains to Theresa Raskob in all other respects.

### B. Lee Walter

In their motion, Defendants requested "income statements" and "contracts" that show the terms of Lee Walter's post-termination employment terms. (Def.'s Mem. 11, Sept. 9, 2009.) This Court concludes that this request as it pertains to the contract terms is irrelevant to the question of whether "plaintiff . . . use[d] reasonable diligence in finding other suitable employment." *Newhouse*, 110 F.3d at 641. And "income statements" is "unreasonably

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," namely Lee Walter's tax returns. Therefore, This Court denies Defendants' motion as it pertains to Lee Walter.

### C. Narendra Garg

Defendants requested Plaintiff Narendra Garg produce "[a]ll documents that refer or relate to Narendra K. Garg Agency, Inc., or other business in which you have or previously had an ownership interest during the period of 2003 to the present" and "[a]ll documents that refer or relate in any way to your relationship with American Family Insurance . . . ." This Court concludes that this request is overly broad in that it seeks evidence that is irrelevant to any claims or defences and is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," namely Narendra Garg's tax returns. This Court orders that, on or before October 30, 2009, Plaintiff Narendra Garg shall provide complete, non-privileged information responsive to these requests by producing: (1) all individual state and federal tax returns with all schedules and attachments, from tax year 2004 forward, and (2) all state and federal tax returns, with all schedules and attachments, related to Narendra K. Garg Agency, Inc., and any other business Narendra Garg has an ownership interest, from tax year 2004 forward. This Court denies Defendants' motion as it pertains to Narendra Garg in all other respects.

### D. David Olson

Defendants requested that this Court order David Olson to produce in native format the Excel spreadsheet containing an analysis that he previously produced to Defendants and provided to the EEOC. (Def.'s Mem. 13-14, Sept. 9, 2009.) This Court denies Defendants' motion as "unreasonably cumulative or duplicative, or can be obtained from some other source

15

that is more convenient, less burdensome, or less expensive." Defendants already have in their possession a printed version of the spreadsheet. This Court denies Defendants' motion as it pertains to David Olson.

### E. Paul Calcagno

Defendants claim that Paul Calcagno has failed to produce documents relating to his pension benefits and his tax returns. This Court concludes Defendants' request is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," namely Paul Calcagno's tax returns. This Court orders that, on or before October 30, 2009, Plaintiff Paul Calcagno shall provide complete, non-privileged information responsive to Defendants' requests by producing all individual state and federal tax returns, with all schedules and attachments, from tax year 2004 forward. This Court denies Defendants' motion as it pertains to Paul Calcagno in all other respects.

### F. Richard Kerhwald

Defendants claim that Paul Calcagno has failed to produce documents relating to his self employment as a "Day Trader." This Court concludes Defendants request is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," namely Richard Kerhwald's tax returns. This Court orders that, on or before October 30, 2009, Plaintiff Richard Kerhwald shall provide complete, non-privileged information responsive to Defendants' requests by producing all individual state and federal tax returns, with all schedules and attachments, from tax year 2004 forward. This Court denies Defendants' motion as it pertains to Richard Kerhwald in all other respects.

### G. Michael McDaniel

Defendants claim that Michael McDaniel has failed to produce documents relating to his business, MC3, Inc./Graystone Currency and efforts to mitigate his claimed lost income. (Def.'s Mem. 18, Sept. 9, 2009.) This Court concludes that Defendants' requests are overbroad. This Court orders that, on or before October 30, 2009, Plaintiff Michael McDaniel shall provide complete, non-privileged information responsive to these requests by producing: (1) all individual state and federal tax returns with all schedules and attachments, from tax year 2004 forward; (2) all state and federal tax returns, with all schedules and attachments, related to MC3, Inc./Graystone Currency and any other business Michael McDaniel has an ownership interest, from tax year 2004 forward; (3) all documents that refer or relate to his efforts to obtain employment from January 1, 2004, forward. This Court denies Defendants' motion with respects to Michael McDaniel in all other respects.

### III. REQUEST FOR ATTORNEY FEES/SANCTIONS

Both parties filed motions to compel and requested attorney fees and sanctions. Rule 26(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court . . . *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." (Emphasis added.) In the present circumstances, attorney fees or sanctions are unwarranted.

## IV. CONCLUSION

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Compel [Docket No. 171] is **GRANTED IN PART** and **DENIED IN PART** as provided herein.

2. Defendants' Motion to Compel [Docket No. 168] is **GRANTED IN PART** and **DENIED IN PART** as provided herein.

Dated: 10/19/09

    s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge